UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| TIFFNEY CANADA o/b/o R.C. | CIVIL ACTION NO. 08-cv-0539 |
| VERSUS | JUDGE HICKS |
| U.S. COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Tiffney Canada filed an application for Supplemental Security Income on behalf of her son, RC, who suffers from several health problems. RC, who was born in September 1993, was 14 years old when ALJ W. Thomas Bundy assessed his claim and denied benefits. Tr. 8-20. The Appeals Council denied a request for review. Tr. 3-5. Ms. Canada then filed this appeal to seek the limited judicial relief that is available under 42 U.S.C. § 405(g). It is recommended, for the reasons that follow, that the Commissioner's decision to deny benefits be affirmed.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925

F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Analysis**

A three-step evaluation process is used to determine whether a child is disabled under the Act. See Swist ex rel. Green v. Barnhart, 177 Fed. Appx. 414, 416 (5th Cir. 2006). The first question is whether the child is engaged in substantial gainful activity, and the ALJ found that RC was not. Tr. 14. The second question is whether the child has an impairment that is "severe" within the meaning of the regulations. The ALJ found that RC has hypertension, renal artery hypoplasia, and neurofibromytosis, impairments which are severe. Tr. 14. The third question is whether those impairments are medically or functionally equivalent in severity to the impairments listed in the disability regulations. There is no contention that RC's impairments met a listed impairment, so the question is whether the impairments functionally equal a listed impairment.

A decision on functional equivalence requires consideration of the child's limitations in six areas or domains. The domains are:

    (1) acquiring and using information

    (2) attending and completing tasks

    (3) interacting and relating with others

    (4) moving about and manipulating objects

    (5) caring for your self

    (6) health and physical well-being.

20 C.F.R. § 416.926a(b)(1). The limitations imposed by an impairment are described in increasing levels of severity: none, moderate, marked and extreme. The child will be considered disabled if he has an extreme limitation in one domain or a marked limitation in two domains. Section 416.926a(d).

    Moderate is not specifically defined, but a marked limitation is defined as "more than moderate" but "less than extreme." A marked limitation interferes seriously with the child's ability to independently initiate, sustain or complete activities. It is the equivalent of the functioning you would expect to find on standardized testing with scores that are at least two but less than three standard deviations below the mean. Section 416.926a(e)(2).

    An extreme limitation is "more than marked." A child has an extreme limitation when the impairment interferes very seriously with his ability to independently initiate, sustain or complete activities. Extreme is the rating given to the worst limitations, but it does necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning one would expect to find on standardized testing with scores that are at least three standard deviations below the mean. Section 416.926a(e)(3).

    The ALJ found that RC had no limitation in any domain except health and physical well being, which he assessed as "less than marked." Plaintiff's pro se brief does not make any specific arguments that a greater limitation should have been found in any of the domains

other than health and physical well being. Rather, her brief focuses on RC's physical health, thus implying an argument that the ALJ should have found an extreme limitation in the domain of health and physical well being. Only an extreme limitation in that one domain could lead to a finding of disability. A finding of a merely marked limitation would require a marked limitation in another domain to support a finding of disability.

The regulations set forth some examples of impairments and limitations that would functionally equal the listings. They include a need for major organ transplant, walking is possible only with bilateral upper limb assistance, the impairments cause complete inability to function independently outside the home, 24-hour-a-day supervision is required, a congenital organ disfunction which could be expected to result in death within the first year of life without surgical correction, and a condition that requires continuing surgical management as a life-saving measure or restoration of function (and such major function is not restored or is not expected to be restored within 12 months after onset of the condition). 20 C.F.R. § 416.926a(m).

The ALJ looked to the findings of Dr. Billy McKellar, a state agency medical examiner. Social Security Ruling 96-6p states that state agency medical consultants are highly qualified physicians who are experts in the evaluation of medical issues in disability claims under the Act. The ALJ found that the state agency examiner's assessment was well supported by the record. Tr. 15. Dr. McKellar found a less than marked impairment in the area of health and physical well being. He noted that the medical records showed the child

had renal artery hypoplasia and hypertension and was on medications. The child's blood pressure was slightly elevated for his age but was normal at his last visit. The treating physician had indicated in the records that the child had neurofibromytosis, but he did not mention any problems or limitations caused by the condition. Tr. 120-26. The ALJ noted those same reasons for his finding that the impairment was less than marked in this domain. Tr. 20.

Plaintiff does not point to any medical evidence that was in the record before the ALJ that is so compelling as to suggest that the ALJ erred in not finding an extreme limitation. Plaintiff's description of the child's medical condition is that his blood pressure was too high for him to play football. He has taken regular blood pressure medication and been told that he may not play any type of sports or engage in heavy lifting, and he had to receive surgery on his left kidney in May 2008. Nothing in those assertions undermines the ALJ's finding. With regard to the 2008 surgery, it came after the ALJ's decision so is not relevant to the time period at issue on this appeal. Plaintiff attaches medical records related to the surgery and suggests that the result would be different if they were considered.

The court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g)(sentence 6). For new evidence to be material, there must exist the reasonable probability that, if it had been presented to the

Commissioner, it would have changed the outcome. Latham v. Shalala, 36 F.3d 482, 483 (5th Cir. 1994). The evidence must also relate to the time period for which benefits were denied and cannot concern evidence of later acquired disability or subsequent deterioration of a previously non-disabling condition. Bradley v. Bowen, 809 F.2d 1054, 1058 (5th Cir. 1987).

As noted, the evidence Plaintiff submits is not concerning the child's health during the period the ALJ was reviewing. Even if the 2008 medical evidence related back to the relevant time frame, there is no reasonable probability that it would have changed the outcome. The medical records show that the child was admitted to the hospital in March 2008 with poorly controlled blood pressure, and he was discharged the next day with his blood pressure "well controlled" and with instructions to continue current blood pressure medicines and resume normal activity. The child underwent an aortorenal bypass in May 2008. The physician stated that the goal of the procedure was to improve the child's hypertension, resolve his need for blood pressure medication, and allow him to get back to normal activity for a child his age. Records from a later outpatient visit show that blood pressure levels had improved, though there had been no adjustment in medications. The physician stated a belief that this represented an improvement, but he was not yet sure of the significance.

The child obviously suffers from serious health problems, but there is substantial evidence to support the ALJ's decision that, at the relevant time, the child did not suffer an

extreme limitation. The post-decision medical records are not relevant to the time assessed by the ALJ. Even if they are considered, they are not sufficient to give rise to a reasonable possibility that the ALJ would have reached a different decision had those records been before him. The later records include evidence of a surgery, but it appears to have actually improved the child's health.

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny benefits be **affirmed** and that Plaintiff's complaint be **dismissed with prejudice**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 28th day of December, 2009.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE